THE STATE v. STORTS, *Appellant.*

Division Two, March 10, 1897.

1. Grand Larceny: INTENT IN RECEIVING MONEY. Defendant and a courtesan were charged with stealing $500 from one Norton. The evidence showed that the courtesan received the money from Norton, who at the time stated it amounted to $500; that she counted it and declared there was $350; that then she handed it to the defendant, who counted it, stated there was $505, and gave $5 to Norton and $500 to the courtesan, who put it in her stocking. *Held*, that, as the taking was lawful, because of the consent of the owner, and no intent of depriving the owner of his money was shown, there was no theft.

2. **Grand Larceny:** INTENT. To constitute theft the taking must be fraudulent, wrongful; so, if the property lawfully came into the possession of the accused, the subsequent appropriation thereof is not theft, whether appropriated with fraudulent intent or not. If the possession was lawfully obtained, to convict of larceny it is absolutely essential to prove that the defendant used some false pretext to acquire possession; or, that, at the time of the taking, he intended to deprive the owner of the value thereof.

*Appeal from St. Louis Criminal Court.*—HON. HENRY L. EDMUNDS, Judge.

REVERSED.

*Charles T. Noland* for appellant.

(1) To establish larceny, there must be evidence of a felonious intent existing at the time of the taking of the money; if there is no proof of such intent then no subsequently conceived felonious intent will render the accused guilty of larceny. *Witt v. State*, 9 Mo. 663; *State v. Homes*, 17 Mo. 379; *State v. Conway*, 18 Mo. 321; *State v. Hoffman*, 18 Mo. 329; *State v. Shermer*, 55 Mo., *loc. cit.* 87; *State v. Arter*, 65 Mo. 653; *State v. Ware*, 62 Mo. 597; *State v. Stone*, 68 Mo. 101; *State v. Moore*, 101 Mo. *loc. cit.* 326; *State v. Harmon*, 106 Mo. 635; *State v. Campbell*, 108 Mo. 611; *State v. Skadd*, 80 Mo. 358; 57 Am. Dec. 275, note, citing authorities on larceny; *McDaniel v. State*, 8 Smed. and M. (Miss.) 401. This case holds that if the taking be open, and in the presence of the owner, or of others, it carries with it the evidence that it was only a trespass. 2 Bishop on Crim. Law, sec. 811; 1 Wharton, Crim. Law [9 Ed.], sec. 914. (2) The indictment, being one for simple grand larceny, it could not be supported by evidence of some statutory larceny or embezzlement. Therefore, as Norton willingly consented for Snyder to take and hold his money,

and there being no evidence of such consent having been secured by fraud, Snyder could not be guilty of simple larceny, even though after securing Norton's money, she formed an intent to convert it to her own use, and deprive Norton of it, and did so convert it. *Hamuel v. State,* 5 Mo. 260; *State v. Stone,* 68 Mo. 101; *State v. Harmon,* 106 Mo. 635. ˙ But if Snyder did form the intent to convert the money to her own use after she had first secured it with Norton's consent, there is absolutely no evidence to convict Storts with such conversion.    The discharge of Jennie Snyder upon a *nolle prosequi,* being entered after a new trial had been awarded her, destroys the claim of the State that Storts was guilty by reason of his aiding, abetting or assisting Snyder.    Where the guilt of an accused depends entirely upon the fact that his codefendant is guilty, and that he is guilty by reason of aiding, abetting or assisting such codefendant, then the rules of law applicable to the trial of conspirators should be applied as to him, and if his codefendant is acquitted, he is entitled to an acquittal also.    *State v. Larumbo,* Harper Law Rep. (S. C.) 183; *State v. Mainor & Wilkes,* 6 Ired. (N. C.) 340; *State v. Bailey and another,* 3 Blackf. 209; *State v. Parham,* 5 Jones, Law Rep. (N. C.) 416; *Rex v. Turner,* 1 Sid. 171; 1 Bishop, New Crim. Proc., secs. 1036 to 1040.    The court should have sustained defendant's demurrer as to Storts, and upon the whole case the evidence is such that the verdict of guilty against Storts should be ascribed by this appellate court to passion or prejudice.    So often has this honorable court asserted that whenever a reading of the record convinced them an injustice had been done an accused, and that he was about to suffer punishment, when the great weight of the evidence was in favor of his innocence, this court

would not hesitate to reverse the judgment, that citation of such decisions is not necessary.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

BURGESS, J.—Defendant and one Jessie Snyder, who was jointly indicted with him, were convicted in the St. Louis criminal court, of St. Louis, at its October term, 1895, of grand larceny, and their punishment fixed at two years' imprisonment in the penitentiary, respectively.

They then filed their motion for a new trial, which was sustained as to Jennie Snyder, and overruled as to defendant.   Defendant appeals.

Defendant and Jennie Snyder, a courtesan, were at the time of the commission of the alleged offense, and prior thereto, on the most intimate terms, entertaining criminal relations with each other.

David C. Norton, the person from whom the money is alleged to have been stolen, testified as follows: "I reside at Eminence, Missouri, in Shannon county.   In August, 1895, I was dealing in stock and in the mercantile business, and at present am in no business at all.   I have known the defendant Jefferson D. Storts some twenty years.   I came to St. Louis in August, 1895, on the thirtieth day of that month; had in my possession in St. Louis $500 lawful money of the United States, half of which belonged to myself and the other half to another party.   I got the money at the National Stock Yards there in the Exchange Building in a bank.   I had the $500 on my person on the thirtieth of August, 1895, in the house at number 8, South Eleventh street, St. Louis, Missouri.   I drew the money on the twenty-eighth day of August, and on the second evening thereafter, I met the defendant Storts on Elev-

enth street at number 8.   The first time I met him was about 8 o'clock in the evening, and the second time, being the time I parted with my money, was from 12 to 2 o'clock of the same night.   It happened at number 8, South Eleventh street in the house.   The denominations of the bills ranged from 5's to 10's and 20's, in United States currency.   I could not tell exactly how many of each.   At the time that I parted with the money there were present, the defendant, Mr. Storts, his codefendant, Jessie Snyder, Mary Ann O'Connell, and a friend of mine by the name of Doherty, and another gentleman whose name I can not remember, Cornelius somebody I believe.   I gave the money to Storts and he counted it, and the Snyder woman took it and counted it, and she made $350; then I said there ought to be more than that there, and Storts counted it and said there was $505.   He gave me $5 and the other $500 to the Snyder woman, and she put it down in her stocking, and that is the last I saw of it.   The next morning I went to the Snyder woman and asked her for my money.   She told me not to be in a hurry about it, that the money was all right, and passed out from the door and I did not see her after that.   I then went to Storts and told him that I had been to the Snyder woman but could not get my money and asked him to get it for me.   He told me not to be in a hurry or act a fool, or something to that amount, do not remember just what, and that he would get the money for me.   He went in search of the woman and failed to find her, so he told me.   I went with him to the house and made a search of the house through the rooms and she was not there.   As yet I have not recovered any of the $500 that I lost.   The $265 shown me by Captain O'Malley in denominations and size of bills was similar to that which I lost."   (Witness was shown package of bills containing $265, and stated that in denominations

and size of bills it resembled the property he had stolen from him; that it looked like the money he had lost).

Michael O'Malley, a witness for the State, testified as follows: "I am captain of the police force in the central district of the city of St. Louis, Missouri, and have held that position a good while, holding it during the month of August, 1895. After the defendants had been arrested I went back to the calaboose where they were confined and Mr. Storts made a statement to me. He told me that Jessie Snyder was counting the money and had counted in the neighborhood of $350, and Norton says, 'there ought to be $500 there,' and Storts says, 'let me count it,' and he counted it and there was $505, and he stated that he counted $500 of it and gave the $5 to Norton and $500 to Jessie Snyder. This conversation was probably an hour or so after he was arrested. After the defendant was arrested, and but a very short time, I received from Mr. McDermott, saloon keeper, a parcel of money amounting to $80, which Storts told me that he left there in the saloon on the night of the thirtieth of August and that on the next morning he called and got $5 of it from the bartender. He told me that he left it on the night of the thirtieth of August, yet early in the morning, after midnight. Storts told me that the bills were in 1's and 2's, but I opened the package in the office in front of Mr. McDermott and Mr. Storts, and there was nothing there but 5's and 10's. I gave the package to Mr. McDermott and he gave it to Mr. Storts."

Joseph Gocking testified as follows: "I am a member of the police force in the city of St. Louis, Missouri, and have been for nineteen years. I do special work. After the report was made by Norton to the police with reference to the alleged larceny of his money, I arrested defendant Storts. I arrested him

about 11 o'clock in the morning on the thirty-first day of August, 1895.   After we got down to the captain's office he wanted to know what he was arrested for and I told him in regard to the $500 that Jessie Snyder got from Norton.   Storts says:   'Why, I counted that money myself this morning about 2 o'clock, and I counted $505 and gave Norton $5 and the package of $500 to Jessie Snyder and she put it in an envelope and put it in her stocking.'   Officer Kelly was with me at the time.   The second time I had a conversation he denied knowing anything about the money."

Michael W. Kelly testified as follows:   I am a member of the police force of the city of St. Louis and have been for some years.   I recollect the time it was reported that some money was taken from Norton, the prosecuting witness in this case, and I recollect the fact that it was reported to the police.   I saw defendant Storts, after his arrest, and he made a statement to me in regard to the matter.   After I brought Mr. Storts on the way to the Four Courts along with officer Gocking, he wanted to know what he was arrested for; so, when he came to the captain's office, Gocking told him that he was arrested for knowing something about $500 that was taken from Mr. Norton.   He says, "Yes, I know all about that.   I, last night, counted out five hundred and five dollars of Mr. Norton's money; I gave five hundred to Jessie Snyder and five dollars to Mr. Norton, thinking that was enough for him to have that evening."

The evidence for the defense tended to show that Jessie Snyder had received considerable money in insurance, a short time before, upon the death of her husband.   That Storts had $106 a short time before the alleged larceny, which he saved to pay a fine of $100 for contempt of court, provided he lost in his writ of *habeas corpus* proceedings.   Testimony showing that

Norton had told various parties that he knew Storts was innocent, and was not certain whether Jennie Snyder was guilty. That Norton had tried to compromise the case by compounding a felony. That he signed the affidavit, knowing its contents, and a defense to the indictment; that when Storts gave the $500 to Jessie Snyder, Norton took it from her, saying he did not need a guardian, and that if he lost the money at all, it was taken by someone other than defendants, when on a carriage ride, lasting from about 2 o'clock in the morning until 7 o'clock—a short time before he reported to the police.

The court instructed the jury, as follows:

"The defendants are charged by the indictment with grand larceny and plead not guilty, and the court instructs you as follows:

"Though the defendants are jointly indicted, you are not bound to acquit both if you acquit one, nor to convict both if you convict one. If you find from the evidence in the cause that both of the defendants are guilty, you should convict them both, and if you find that either one of the defendants is guilty, you should convict such defendant. If, however, you find from the evidence that neither one of them is guilty, you should return a verdict of not guilty as to each defendant.

"If you believe and find from the evidence in the cause that the defendants, Jefferson D. Storts and Jessie Snyder, at the city of St. Louis, Missouri, within three years prior to the finding of the indictment, did wrongfully take and carry away five hundred dollars lawful money of the United States, or any part thereof, of the value of thirty dollars or upward, from the possession of David C. Norton, with the intent, at the time, to fraudulently convert the same to their own use, and permanently deprive the owner thereof without his

consent, and that the same was the property of David C. Norton, and of the value of thirty dollars or upwards, you will find the defendants guilty of grand larceny, and assess their punishment at imprisonment in the penitentiary for the term not less than two years nor more than five years, and unless you so find you will acquit the defendants.

"The court instructs you that all persons are principals and equally guilty of committing a felony who act in concert and with a common intent in the perpetration thereof. If, therefore, you believe and find from the evidence in the cause that either one of the defendants stole the money of said Norton, or any part thereof above the amount and value of thirty dollars as defined in the previous instruction, and further find from the evidence in the cause that the other defendant aided, abetted, assisted, or encouraged such defendant in the commission of the larceny, then you will convict both defendants of grand larceny.

"The defendant, Jefferson D. Storts, is a competent witness in his own behalf, but the fact that he is one of the persons on trial, should be considered by you in passing upon the credibility of his testimony.

"The defendant, Jessie Snyder, is a competent witness in her own behalf, but the fact that she is one of the persons on trial should be considered by you in passing upon the credibility of her testimony.

"The court instructs you that you are the exclusive judges of the credibility of the witnesses, and the weight to be given to their testimony, and if you believe from the evidence that any witness has willfully and knowingly sworn falsely to any material fact in the case, you are at liberty to reject the whole or any portion of such witness' testimony.

"The law presumed each one of the defendants to be innocent, and this presumption continues until it

has been overcome by proof which establishes his or her guilt to your satisfaction, and beyond a reasonable doubt; and the burden of proving his or her guilt rests with the State.

"If, however, this presumption has been overcome by the evidence, and the guilt of the defendants, or either one of them, established to a moral certainty, and beyond a reasonable doubt, your duty is to convict such defendant or defendants. If of the guilt of either one of the defendants, you are not convinced, beyond a reasonable doubt, your duty is to acquit such defendant. But to justify an acquittal on the ground of doubt alone, it should be reasonable and substantial, and not a mere guess or conjecture of the possibility of innocence.

"The court instructs the jury that the testimony of the police officers that defendant, Storts, stated to them that he had at one time, on the night of August 30, 1895, or the morning of August 31, 1895, handed defendant, Jessie Snyder, five hundred dollars, money belonging to said Norton, and that said Jessie Snyder placed the same in her stocking, is not competent testimony against defendant, Jessie Snyder, and you must wholly reject it and disregard it in determining whether or not said Jessie Snyder is guilty of the larceny charged."

At the request of defendant the court instructed the jury as follows: "The court instructs the jury that if they believe and find from the evidence that the witness, Norton, received his money after it had been in the possession of the defendants, or either of them, and thereafter went carriage riding and became intoxicated and while intoxicated lost or spent his money, then you will acquit the defendants."

The following instruction was asked by defendant and refused: "The court instructs the jury that under

the law and the evidence in this cause, they must acquit the defendants.''

The first question presented for our consideration is with respect to the ruling of the court in refusing the instruction asked by defendant in the nature of a demurrer to the evidence.   There is nothing in the record tending to show that the money was obtained by defendant from Norton, by any solicitation on his part, or by any fraudulent trick or device, but the evidence does show that Norton voluntarily handed the money to defendant who counted it and handed it to Jessie Synder in his presence, and that she then took it and put it down in her stocking in his presence, to which he made no objection, and must be considered as having assented thereto.   There were present while the money was being counted by Jessie Snyder and defendant and passed from one to the other, at least two other persons, namely, Mary Ann O'Connell and a friend of Norton's by the name of Doherty.   It has been said that: ''Every felony includes trespass. * * * To constitute this offense, therefore, in any form, there must be a taking from the possession, a carrying away against the will of the owner, and a felonious intent to commit it to the offender's use.''   *Witt v. State*, 9 Mo. 663.

It therefore seems clear from the evidence that there was wanting on the part of defendant in order to make him guilty of grand larceny, that felonious or fraudulent intent at the time he received the money from the hands of Norton to deprive him of it, or some part thereof, and to appropriate it to his own use, which is absolutely necessary to constitute the offense of grand larceny.

The rule is announced by HURT, Judge, in *Hernandez v. The State*, 20 Tex. App. 152, to be as follows: ''To constitute theft the taking must be wrongful,

fraudulent; so, if the property came into the possession of the accused lawfully, the subsequent appropriation of the same is not theft. Nor will the subsequent appropriation, though with fraudulent intent to deprive the owner of the value thereof, and to appropriate. it to the use or benefit of the taker, constitute theft. The *taking* must be obtained either by some false pretext, or with intent, at the time of the taking, to deprive the owner of the value thereof. We are discussing the taking of the property, and not the subsequent appropriation thereof.''

The taking, as in this case, being lawful because of the consent of the owner, to constitute theft, the taker must have obtained possession by some false pretext, or must, at the time he obtained possession, have intended to deprive the owner of its value, etc. Of course a subsequent actual appropriation of the property is required.

As the possession was obtained lawfully, to convict it is absolutely essential to prove that the defendant used some false pretext to acquire possession; or, that at the time of the *taking*, he intended to deprive the owner of the value thereof, etc. *State v. Conway*, 18 Mo. 321; *State v. Ware*, 62 Mo. 597; *State v. Stone*, 68 Mo. 101; *Guest v. State*, 24 Tex. App. 235; *Lott v. State, Id.* 723; *Stokely v. State, Id.* 509; *Beatty v. State*, 61 Miss. 18.

The burden was upon the state to show the existence of a felonious intent upon the part of defendant to steal the money at the time he received it from Norton, and this we think it failed to do. The money was handed to him by Norton of his own volition without any solicitation or trick on the part of defendant, and this, too, in the presence of two other persons.

These facts in the absence of evidence tending to show a conspiracy between them to steal seem conclu-

sive of the want of felonious intent on the part of defendant.

The instruction in the nature of a demurrer to the evidence should have been given.

The judgment is reversed and the defendant discharged.   All concur.