## THE STATE v. DONALD W. ROSS, Appellant.

### Division Two, January 6, 1926.

1. **INDICTMENT: Embezzlement: Public Officer: Appointed by Virtue
of Constitution.** Under the statute (Sec. 3334, R. S. 1919), declar-
ing that "if any officer, appointed or elected by virtue of the
Constitution of this State, or any law thereof," etc., it is not neces-
sary that the indictment, charging that defendant as Special Deputy
Commissioner of Finance embezzled the funds of an insolvent bank
in his charge, allege that he was appointed by virtue of the Consti-
tution of this State or any law thereof. It is sufficient to charge his
official character, that he received the money by virtue of his office
as Special Deputy Commissioner, and that he fraudulently and
feloniously converted the same to his own use.

2. **WITNESSES: Indorsement on Indictment.** The trial court did not
abuse a judicial discretion in permitting the names of three ma-
terial witnesses to be indorsed on the indictment or in permitting
them to testify, where counsel for the State, after their names were
indorsed, offered to let the case go over to the next day in order that
defendant might take their depositions if he desired to do so, and
the offer was declined.

3. **EMBEZZLEMENT: Investment of Money.** Where a public official
is charged with embezzling money of a bank in his hands evidence
showing how he invested the money and the transactions pertain-
ing to the investment is competent.

4. **———: Venue.** Testimony of the cashier of a St. Louis bank that
on a certain day he made out a cashier's check payable to a local
telegraph company and delivered it to defendant, and the check
itself showing on its face that it was thereafter paid by said bank,
sufficiently shows that the embezzlement occurred in St. Louis, al-
though the telegraph company wired the money to Kansas City and
it was there used to pay for bank stock sold to defendant.

State v. Ross.

5. ———: Incorporated Bank: Immateriality: Variance. Where the evidence shows that the bank was taken over by the Commissioner of Finance; that defendant was put in possession of it as Deputy Commissioner of Finance, and that he appropriated its money to his own use, it is immaterial whether the bank was incorporated, for he was guilty of embezzlement whether or not it was incorporated. And those facts being proven, there was no variance between the indictment and proof, although the incorporation of the bank was alleged but not proven.

6. ———: Deputy Commissioner: Instruction: Appointment by Virtue of Constitution. Although defendant was appointed Special Deputy Commissioner of Finance by virtue of the statute, an instruction for the State, in his trial upon a charge of embezzling the funds of a bank in his charge as such Deputy Commissioner, which requires the jury to find that he was appointed by virtue of the Constitution, is not erroneous. It was unnecessary for the instruction to mention either the Constitution or the statute, where there was no issue relating to his appointment. Besides, it is apparent that the words "by virtue of the Constitution" were a clerical error.

7. ———: ———: ———: As Trustee. An instruction telling the jury that if they find that defendant "was the duly constituted and appointed agent and Special Deputy Commissioner of Finance of the State of Missouri and as such was the agent of the Finance Commissioner of the State" and that as such agent and Deputy Commissioner he took "into his possession and had under his care and control as trustee for and on behalf of the said Night & Day Bank, under and by virtue of his office, $28,250," etc., is not erroneous, although it uses the words "as trustee." As agent and deputy, to take charge of the bank and wind up its affairs, he was agent of the Commissioner of Finance, and held the property taken in charge by him as trustee for said bank; but the instruction would have been valid without the words "as trustee" and their use therein did not impair its legality.

8. ———: Warning. The statutes of this State are a sharp and positive warning to public officers, bank officials and other persons occupying positions of trust and confidence that, however innocent their intentions may be, they are guilty of embezzlement if they convert to their own use, in any manner whatsoever, moneys received by them by virtue of such trust and confidence.

Criminal Law, 16 C. J., Section 1572, p. 767, n. 87; Section 2027, p. 796, n. 54; p. 797, n. 60; 17 C. J., Section 3689, p. 341, n. 84. Embezzlement, 20 C. J., Section 22, p. 437, n. 71; Section 55, p. 458, n. 63; Section 62, p. 467, n. 21 New; Section 70, p. 476, n. 78, 79; Section 72, p. 478, n. 91; Section 79 p. 484, n. 53; Section 82, p. 486, n. 60; Section 86, p. 490, n. 84; Section 87, p. 490, n. 89,

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun,* Judge.

AFFIRMED.

*Bass & Bass* for appellant; *Cosgrove & Doyle* of counsel.

(1) These laws being relative to public officers, whose powers are prescribed by public law, this court will take judicial cognizance that they do not make a trustee of the Commissioner of Finance or his agents, deputies or special deputies for and on behalf of a bank that has been taken possession of and is in charge of the said officers under said laws or by virtue thereof. State v. White, 263 S. W. 192; State v. Higgins, 124 Mo. 649; State ex rel. Clark v. Gates, 67 Mo. 142; Secs. 11673 to 11726, R. S. 1919, Laws 1921, p. 393. (a) No trustee existed as alleged and set out in the indictment, neither by virtue of the Constitution of this State nor any law thereof. No "trustee" came into being for and on behalf of the Night & Day Bank under and by virtue of the laws that created and defined the powers and duties of the Finance Commissioner, his agents, deputies or special deputy finance commissioners. Sec. 3334, R. S. 1919; State v. Hall, 126 Mo. 585; State v. Cleveland, 80 Mo. 108; Hamuel v. State, 5 Mo. 564; People v. Shearer, 143 Cal. 66; State v. Hubbard, 58 Kan. 797. (b) The indictment charges that the accused "did then and there receive and take into his possession and have under his care and control as trustee for and on behalf of the Night & Day Bank" the money alleged to have been feloniously embezzled and converted. It should, in the language of the statute on which the indictment is based, have been distinctly charged that the defendant did then and there receive and take into his possession and have under his care and control as trustee the money in question, and that it came to him "by virtue of the trust reposed in him." "No indictment is good without such allegation."

State v. Harmon, 106 Mo. 655; Clark's Crim. Law, p. 274; Tipton v. State, 53 Fla. 69; 2 Bishop Criminal Law (Ed. 1923) sec. 352; State v. Zingher, 302 Mo. 650; Sec. 3334, R. S. 1919. (2) It was prejudicial error to permit the State, after the jury had been selected and sworn, to endorse upon the indictment herein the names of six new witnesses and to refuse defendant's request for a continuance or resetting of the case so as to enable him to prepare to meet the testimony of the new witnesses. State v. Pearson, 270 S. W. 349. (3) The defendant's motion in the nature of a demurrer should have been given. (a) Because the State failed to prove as alleged the venue of the alleged offense as being at the city of St. Louis. The venue of the offense was at Kansas City. State v. Bouslog, 266 Mo. 73; State v. Mispagel, 207 Mo. 557; State v. Bacon, 170 Mo. 161. (b) Because the State failed to prove in any manner or form as alleged that the Night & Day Bank was a duly incorporated banking institution organized and existing under and by virtue of the laws of the State of Missouri as alleged. (c) Because the State failed to prove that the appellant was a trustee, either in fact or in law, or that he received and took into his position and had under his care and control as trustee the money alleged to have been embezzled, or that he embezzled said money as a trustee for and on behalf of the Night & Day Bank; or that there was any fiduciary relation between appellant and the Night & Day Bank, or that there was any money that came to appellant by virtue of the trust reposed in him by the Night & Day Bank. State v. Zingher, 302 Mo. 659; Kelly's Criminal Law (3 Ed.) sec. 241; State v. Brown, 171 Mo. 480.

*Robert W. Otto,* Attorney-General, and *W. F. Frank,* Assistant Attorney-General, for respondent.

(1) The indictment properly charges the crime of embezzlement. Sec. 3334, R. S. 1919; State v. Clarkson, 59 Mo. 149; State v. Larew, 191 Mo. 192; State v. Moreaux, 254 Mo. 398; State v. Julin, 292 Mo. 270. (2) The

evidence sufficiently supports the charge. State v. Laughlin, 180 Mo. 342; State v. McCawley, 180 S. W. 871; State v. Martin, 230 Mo. 680; State v. Meininger, 268 S. W. 79. (3) There was no variance between the indictment and proof. State v. Meininger, 268 S. W. 79; State v. Martin, 230 Mo. 699. (4) Instruction numbered one properly declares the law of the case. State v. Noland, 111 Mo. 473; State v. Meininger, 268 S. W. 78.

RAILEY, C.—After reading the record and briefs of counsel, we have reached the conclusion that the statement made by counsel for respondent as to the State's case is substantially correct and we hereby adopt the same as follows:

Appellant was charged in an indictment containing two counts, returned into the Circuit Court of the City of St. Louis on the second day of June, 1923, with the embezzlement of $28,250, moneys of the Night & Day Bank. He was tried before a jury in said court and on December 5, 1923, was found guilty of embezzlement as charged in the first count of the indictment and his punishment assessed at five years' imprisonment in the State Penitentiary. Judgment and sentence were rendered in conformity with the verdict, from which an appeal was taken to this court.

The State's evidence shows that the Night & Day Bank was a banking institution and doing a general banking business in the city of St. Louis, prior to January, 1922. At this time it was taken over by the Finance Department of the State of Missouri. The appellant was appointed Special Deputy Commissioner of Finance, and as such was placed in charge of the business. affairs and property of the Night & Day Bank and authorized to collect all debts due the bank, convert the assets into cash and otherwise look after and care for the liquidation of said bank. He was in possession of the business and property of this bank from the date of his appointment as Special Deputy Commissioner until February, 1923, and during this time was engaged in liquidating

the affairs of said bank. The Commissioner of Finance selected the Liberty Central Trust Company of St. Louis as a depository for the funds of the Night & Day Bank during the time it was in liquidation. Appellant kept two accounts with the Liberty Central Trust Company, one his individual account, the other an account styled "Donald W. Ross, Special Deputy Commissioner of Finance in charge of the Night & Day Bank."

On the 14th day of November, 1922, appellant entered into a written option or agreement with one Z. T. Briggs for the purchase of five hundred and ten shares of stock in the West Side State Bank of Kansas City, Missouri, agreeing to pay therefor the sum of seventy-five dollars per share. This contract provided that this purchase should be consummated within seventy-two hours from its date. Appellant withdrew from the funds of the Night & Day Bank on deposit in the Liberty Central Trust Company in the city of St. Louis, the sum of $28,250, and delivered it to Z. T. Briggs as part payment on the five hundred and ten shares of stock in the West Side State Bank of Kansas City purchased by appellant from Z. T. Briggs. Appellant drew a check payable to himself in the sum of $28,250 against the funds of the Night & Day Bank on deposit in the Liberty Central Trust Company, presented this check to the First National Bank of St. Louis and requested said bank to issue to him a cashier's check in the sum of $28,250. The First National Bank presented this check to the Liberty Central Trust Company and received in return therefor a cashier's check payable to the order of the First National Bank in the sum of $28,250. The First National Bank then issued cashier's check in favor of D. W. Ross, Special Deputy, for the sum of $28,-250. Appellant took this check and went away. Shortly thereafter, he returned to the First National Bank and requested that the cashier's check be re-issued in favor of the Western Union Telegraph Company, which was done by the First National Bank. At the time appellant received the cashier's check from the First National Bank,

he stated to Mr. Henderson, assistant manager of said bank, that the Night & Day Bank held a second mortgage on a farm located near St. Joseph, and it was necessary, in order to protect this second mortgage, to have this money in form of a cashier's check. The check written by Ross in the sum of $28,250 against the funds of the Night & Day Bank was cashed by the Liberty Central Trust Company and charged to the account of D. W. Ross, Special Deputy Commissioner. After appellant received the cashier's check payable to the Western Union Telegraph Company, as above stated, he delivered this check to the Western Union Telegraph Company, and upon receipt of said check the telegraph company immediately forwarded by wire the sum of $28,250 to Kansas City, Missouri. The contract entered into between appellant and Z. T. Briggs provided for the purchase of certain bank stock by appellant as heretofore stated. This contract was held in escrow by a Mr. Dillon, Secretary of the Commerce Trust Company of Kansas City, Missouri. Mr. Dillon identified Exhibit V as a check he received from the Western Union Telegraph Company and Exhibit VI as a receipt delivered to the Western Union Telegraph Company at the time he received Exhibit V from said company. He further testified that the indorsement on the back of the check marked Exhibit V is his handwriting and is his signature, and that he delivered this check to Z. T. Briggs. Mr. Dillon also testified that at the time he delivered the check to Mr. Briggs, he delivered stock of the West Side State Bank of Kansas City to Mr. Ross; that he received the stock from Z. T. Briggs prior to the time he delivered it to Ross.

Appellant admits that he drew the $28,250 check against the funds of the Night & Day Bank.

The evidence for defendant was as follows:

H. W. Magee, a bookkeeper of the Empire Transfer Company of Kansas City, Missouri, testified in substance that in November and December, 1922, he was exchange teller at the West Side State Bank at Kansas City, that

he had occasion to honor a draft drawn by defendant for the sum of $4,700 between the 21st and 29th of November, 1922; that the West Side State Bank failed and the above draft was destroyed with other papers; that defendant's general reputation for truth and veracity was good. On cross-examination, witness testified that said draft was drawn on the West Side State Bank, and was secured by stock of said bank; that the latter was taken over by the Commissioner of Finance; that he (witness) paid said draft; that defendant Ross was president of said bank when it closed; that he last saw said draft with the files of said bank about December 1, 1922.

Emil Bode, recalled, testified in substance that he had before him the deposits made by defendant D. W. Ross, Special Deputy, on November 28, 1922; that defendant's Exhibit I is a deposit slip made on said date showing a deposit by D. W. Ross, Special Deputy, in the Liberty Central Trust Company, in the sum of $11,700; that one item was for $7,000 and the other for $4,700; that they were not cash; that defendant's check marked Exhibit 2, represented one of said amounts; that the $4,700 on the deposit slip was a check. On cross-examination he testified that two items covering the $11,700 were deposits by checks; that he believed defendant had a personal account at the Liberty Central Trust Company and that it was kept separate and distinct from his official account as Deputy Commissioner.

Leonard Murphy, who was teller of the West Side State Bank of Commerce at Kansas City, said he had known defendant since the latter bought the West Side State Bank in November, 1922, and that his general reputation for honesty and fair dealing was good.

Donald W. Ross, the defendant, testified in his own behalf substantially as follows: That he was the defendant in this case; that on November 28, 1922, he had an account at the Liberty Central Trust Company in the name of D. W. Ross, Special Deputy Commissioner; that on the above date he deposited a check, designated as defendant's Exhibit 2; that on the same day he deposited

a draft for $4,700 to the same account; that it was drawn on the West Side State Bank aforesaid to cover $5,000 worth of notes he was selling the West Side State Bank; that it was his own personal money, and the check for $7,000 also represented his personal money; that these two items, amounting to $11,700, were deposited on November 28, 1922; that aside from the $11,700, he had deposited in the Liberty Central Trust Company of his own money between $13,000 and $14,000 in the account of D. W. Ross, Special Deputy Commissioner; that he drew the check on that account for $28,250 dated November 28, 1922; that this last-named check represented personal funds of his in that account; that at the time he drew the above check for $28,250 he had a personal account in the Liberty Central Trust Company; that he used his personal account for current transactions; that he was accumulating funds of his own to buy bank stock; that he did not know what became of the checks which made up the $13,-000 or $14,000 of his private funds, deposited in the official account; that he drew money out of the official account on numerous occasions; that he was accumulating a fund of his own to buy an interest in the West Side State Bank.

The exhibits of defendant, marked 1 and 2, covering the slip for $11,700 and the check for $7,000 were offered in evidence.

Defendant testified, on being recalled, that he drew the check marked State's Exhibit 9 for $5,601.24, and that he signed the check in his official capacity.

The evidence for the State on rebuttal was as follows:

W. G. Loeffler, a public accountant, audited the account of D. W. Ross, Special Deputy Bank Commissioner in charge of said Night & Day Bank. He testified that on April 3, 1923, there was a conversation in the office of the Liberty Central Trust Building in which Messrs. Millspaugh, Francis, Case, Gilles, defendant Ross, Kenner and himself were present; that they were discussing said $28,-250 check; that a number of checks were then shown defendant Ross, and he said ''he had used some of the funds

of the Night & Day Bank for his own uses and that he had put some money back in the fund." ·

Some other rebuttal testimony was offered by the State, but we do not deem it of sufficient importance to encumber the record with it as a part of this statement.

I. Appellant was found guilty under the first count of the indictment, which, omitting the for-mal parts, reads as follows:

Indictment: How Appointed.

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court duly impaneled, sworn and charged, upon their oath present, that Donald W. Ross on the 28th day of November, one thousand nine hundred and twenty-two in the city of St. Louis and State of Missouri, was then and there the duly constituted and appointed agent and Special Deputy Commissioner of Finance of the State of Missouri, and as such was the agent of the said Finance Commissioner aforesaid, to assist in the liquidation of the business and affairs of the Night & Day Bank of St. Louis, Missouri, a duly incorporated banking institution, organized and existing under and by virtue of the laws of the State of Missouri, and doing business as such in the city of St. Louis and State of Missouri; that the said Donald W. Ross, the agent and Special Deputy Commissioner of Finance of the State of Missouri as aforesaid, was then and there authorized to collect and receive money, the property of the said Night & Day Bank of St. Louis, Missouri, a corporation, as aforesaid; that the said Donald W. Ross as said agent and Special Deputy Commissioner of Finance of the State of Missouri as aforesaid, did then and there receive and take into his possession and have under his care and control as trustee for and on behalf of the said Night & Day Bank of St. Louis, Missouri, a banking corporation as aforesaid, under and by virtue of his office and position as said agent and Special Deputy Commissioner of Finance as aforesaid, twenty-eight thousand, two hundred and fifty dollars, lawful money of the United States of the value of twenty-eight thousand,

two hundred and fifty dollars, the money and personal property of the said Night & Day Bank of St. Louis, Missouri, a banking corporation as aforesaid; that the said Donald W. Ross on the 28th day of November, 1922, the said twenty-eight thousand, two hundred and fifty dollars, lawful money of the United States of the value of twenty-eight thousand, two hundred and fifty dollars, the money and property of the said Night & Day Bank of St. Louis, Missouri, a banking corporation as aforesaid, so received, had in his possession and under his care and control, did then and there feloniously and fraudulently embezzle and convert to his own use, without the consent of the said Night & Day Bank of St. Louis, Missouri, a banking corporation as aforesaid, with the felonious and fraudulent intent then and there to permanently deprive the owner, the said Night & Day Bank of St. Louis, Missouri, a banking corporation as aforesaid, of the use thereof; and so the said Donald W. Ross, the said twenty-eight thousand, two hundred and fifty dollars, lawful money of the United States of the value of twenty-eight thousand, two hundred and fifty dollars, the money and personal property of the said Night & Day Bank of St. Louis, Missouri, a banking corporation as aforesaid, then and there in the manner and form aforesaid, fraudulently and feloniously did take, steal and carry away and convert the same to his own use, against the peace and dignity of the State."

Appellant filed a motion to quash the indictment for several reasons alleged therein. His first assignment of error charges that: "The indictment fails to allege whether Donald W. Ross, the accused, was an officer appointed by virtue of the Constitution of this State or any law thereof."

We are of the opinion that the above contention is not sound, nor is it sustained by the two authorities cited. State v. Barnes, 281 Mo. 514, was a statutory rape case, and in no way discusses the subject of embezzlement. We held in the above case that in order to sustain a conviction for rape, under the statute then being considered, it must appear from the information that defendant was

over seventeen years of age when the alleged offense was committed. The information charged that defendant was over sixteen years of age. We held that the above aver- . ment was not equivalent to an allegation that he was then over seventeen years of age.

The other case relied on is that of State v. Flint, 62 Mo. l. c. 398-9. The most casual reading of this case will clearly indicate that it does not sustain defendant's contention as applied to the facts before us. The defendant was Sheriff and Collector of Daviess County, Missouri, and was charged with the crime of embezzlement. On page 398, WAGNER, J., in considering the sufficiency of the indictment, said: ''It is charged that he converted to his own use, while he was in office as sheriff and collector, large sums of money received by him as such, belonging to the state and county revenue, and that was sufficient.''

On page 400, Judge WAGNER said: ''The indictment alleges that defendant 'did convert to his own use by way of investment in property and merchandise, and make way with and secrete' the public money. The offense consists in investing the money in property or merchandise, or in making way with and secreting the same. Both of these cannot be done with the same money. It is physically impossible. If the money was invested in property or merchandise, it could not be made way with or secreted in the sense of the statute. The defendant should have been informed upon which of these substantive charges he was called upon to answer. They constituted distinct acts and separate modes of committing the offense, and, if it was intended to arraign the accused on each, they should have been inserted in different counts. For this reason the first count was manifestly bad. The same argument will apply to the second count; and we think it was objectionable also on account of its defective allegations of agency. It merely stated that the defendant was the agent of the State and county. It should have alleged when and how he was appointed and the authority for his appointment.''

The General Assembly in 1921 (Laws 1921, p. 393) created a State department of finance, to be under the

control and management of a chief officer, called the Commissioner of Finance, who was to be appointed by the Governor, with the advice and consent of the Senate, and was to hold said office during the pleasure of the Governor. He is required to give bond in the sum of $25,000 and is to receive a salary of $5,000 per annum. Said finance department is vested with extensive powers, and has charge of the execution of the laws relating to banks, private banks, trust companies, etc. Section 6 of above Act, page 395, provides that the Commissioner of Finance, with the approval of the Governor, shall appoint a Deputy Commissioner of Finance, who shall possess the same qualifications required for the Commissioner of Finance. He is required to perform such duties as shall be required of him by the Commissioner of Finance. He holds the office during the pleasure of the Commissioner of Finance, is required to give $15,000 bond and is to receive an annual salary of $3,000 per annum, etc.

The first count of the indictment is heretofore set out in full, and discloses on its face, that on November 28, 1922, the defendant, Donald W. Ross, held the office of Deputy Commissioner of Finance in this State as the agent, and under the control of the Commissioner of Finance; that it was a part of defendant's duties, as deputy aforesaid, to assist in the liquidation of the business and affairs of the Night & Day Bank of St. Louis, Missouri; that as such deputy he was authorized to collect and receive money, belonging to said Night & Day Bank; that as such, he received and took into his possession and under his control for and in behalf of said bank, $28,250 lawful money of the United States, etc.; that on said 28th day of November, 1922, he feloniously and fraudulently embezzled and converted to his own use the money aforesaid, of said bank, with the felonious and fraudulent intent to permanently deprive said Night & Day Bank of the use thereof; that in the manner and form aforesaid he fraudulently and feloniously did take, steal, carry away and convert said money to his own use, etc. It thus clearly appears from the Laws of 1921, and the indictment afore-

said, that on said November 28, 1922, appellant was an officer under the laws of Missouri.

Section 3334, Revised Statutes 1919, provides that: "If any officer, appointed or elected by virtue of the Constitution of this State, or any law thereof, . . . shall convert to his own use, in any manner whatever, . . . any moneys that may have come to him or them by virtue of his or their office or official position, or by virtue of any trust reposed in them, . . . every such officer, agent, . . . shall, upon conviction, be punished in the manner prescribed for stealing property of the kind or the value of the article so embezzled, converted, taken or secreted."

We are of the opinion, that the indictment aforesaid, clearly and fully informed defendant of the charges which he would be called upon to meet at the trial, and that it is sufficient as to both form and substance. [State v. Clarkson, 59 Mo. 149; State v. Manley, 107 Mo. 364; State v. Adams, 108 Mo. l. c. 211-12; State v. Gilmore, 110 Mo. l. c. 6; State v. Noland, 111 Mo. l. c. 484-5-6-7; State v. Lentz, 184 Mo. l. c. 239; State v. Knowles, 185 Mo. l. c. 163-4; State v. Larew, 191 Mo. l. c. 197 and fol.; State v. Blakemore, 226 Mo. 560; State v. Moreaux, 254 Mo. l. c. 405; State v. Julin, 292 Mo. l. c. 270-1.]

In State v. Noland, 111 Mo. l. c. 485, the defendant was charged in the indictment with embezzling state funds. GANTT, J., in discussing the indictment, said: "To constitute embezzlement under this indictment, it was necessary to charge the official character of the defendant, his receipt of the moneys by virtue of his office as treasurer and his fraudulent and felonious conversion thereof to his own use. This the indictment does."

In the case at bar defendant was charged with being a State officer, to-wit, Deputy Commissioner of Finance. He was charged with being in possession of the money and property of the Night & Day Bank of St. Louis by virtue of his said office, and the indictment alleges that on November 28, 1922, as such officer, he embezzled $28,250 of lawful money of the United States, belonging to said Night & Day Bank. The indictment sufficiently complies with

the law. What we have previously said applies with equal force to the other questions raised as to the sufficiency of the indictment. We hold, that the trial court committed no error in overruling appellant's motion to quash the indictment, nor in overruling the motion in arrest of judgment.

II. Under propositions two and three of this brief, appellant charges the court with error in permitting the names of certain witnesses to be indorsed on the indictment, and in permitting such witnesses to testify in the case.

<div style="margin-left:2em">Indorsement of Witnesses.</div>

Only three of these witnesses were examined by the State, to-wit, Helen Berger, an employee of the Western Union Telegraph Company at St. Louis, George W. Dillon and Z. T. Briggs, both of Kansas City. These witnesses were examined about transactions which they had with defendant Donald W. Ross, and related to the alleged embezzlement of the $28,250 belonging to the Night & Day Bank. Counsel for the State, after the names of the three witnesses were permitted to be indorsed on the indictment, offered to let the case go over until the following day in order that defendant might take the depositions of these new witnesses if he desired to do so. This offer was declined, and the trial progressed. After carefully considering the facts in connection with the ruling of the court, we decline to hold that the trial court was guilty of an abuse of judicial discretion under the circumstances aforesaid, in respect to above matter. The foregoing assignments of error are accordingly overruled.

III. Counsel contend, under points 4 and 5, that error was committed, in permitting witnesses Dillon and Briggs to testify in regard to the transaction, in which the $28,250 was sent to Dillon to pay Briggs for 510 shares of stock in the West Side State Bank of Kansas City, Missouri. This was an important circumstance, tending to show an embezzlement of the $28,250 belonging to the Night & Day Bank; and that the

<div style="margin-left:2em">Investment.</div>

money thus embezzled on the same day, was telegraphed to Kansas City to pay for stock there, which was to be turned over to defendant.   No error was committed in respect to above ruling.

IV.   A demurrer to the evidence at the conclusion of the case was overruled.   It is claimed that it should have **Venue.** been sustained, because the venue of the alleged offense was not shown to have been in the city of St. Louis, Missouri.   Mr. R. I. Henderson, assistant manager of First National Bank of St. Louis, Missouri, testified that, on November 28, 1922, at the request of defendant Ross, he had a cashier's check for $28,250 made payable to the Western Union Telegraph Company and delivered the same to defendant.   Said check is marked as defendant's Exhibit 3, and shows on its face that it was paid by the First National Bank of St. Louis, Missouri, on November 29, 1922.   Hence, it clearly appears from the evidence that $28,250 of the funds of the Night & Day Bank deposited in the name of Donald W. Ross as Special Deputy Commissioner, was checked out by defendant and delivered to the Western Union Telegraph Company at St. Louis, Missouri, to pay for defendant's Kansas City stock.   The embezzlement occurred in St. Louis, Missouri.

V.   The question as to whether the Night & Day Bank of St. Louis, Missouri, was incorporated, or simply a private bank, is immaterial in this case. It was taken over **Incorporated Bank.** by the State's Commissioner of Finance as a bank, and defendant was put in possession of same as Deputy Commissioner of Finance. If he appropriated the money of said bank to his own use, as charged in the indictment, he was guilty of embezzlement, whether said bank was incorporated or not.

VI.   There was no variance between the indictment and the proof as shown by the testimony heretofore set out.

VII. It is claimed that instruction numbered one, given by the court, is erroneous in this that it required the jury to find defendant was appointed Special Deputy

Appointment. Commissioner of Finance, by virtue of the "Constitution," when he is appointed to said office under the statute. It was unnecessary for the instruction to mention either the "Constitution" or "statute." Aside from the foregoing, it was a clerical error, which could not affect the merits of the case, and did not tender an issue of fact. The record discloses, that counsel for appellant, made a special objection to instruction one at the time it was given, and mentioned no such criticism as the above. The objection is hypercritical, and devoid of the slightest merit.

VIII. Said instruction one is also criticised because it mentioned the Night & Day Bank as an incorporated institution when the evidence disclosed that it was a private bank. If the defendant embezzled the funds of said bank, he is guilty of the crime charged, whether the bank was incorporated or a private bank. This assignment of error is likewise without merit.

IX. Said instruction one reads as follows:

"If you believe and find from the evidence in this case, in the light of the court's instructions, beyond a reasonable doubt, that at the city of St. Louis and State of Missouri, on or about the 28th day of November, 1922, or

Instruction: at any time within three years prior to the fil-
'As Trustee. ing of the indictment in this case, the defendant, Donald W. Ross, was then and there appointed by virtue of the Constitution of the State of Missouri the duly constituted and appointed agent and Special Deputy Commissioner of Finance of the State of Missouri and as such was the agent of the Finance Commissioner of the State of Missouri, to assist in the liquidation of the business and affairs of the Night & Day Bank of St. Louis, Missouri, and you further find that the said Night & Day Bank of St. Louis, Missouri, was a duly in-

corporated banking institution, organized and existing un-
der and by virtue of the laws of the State of Missouri and
doing business as such in the city of St. Louis and State of
Missouri, and that the said Donald W. Ross, the agent and
Special Deputy Commissioner of Finance of the State of
Missouri, if you so find, was then and there authorized
to collect and receive money and property of the said
Night & Day Bank of St. Louis, Missouri, and that the
said Donald W. Ross as said agent and Special Deputy
Commissioner of Finance of the State of Missouri as afore-
said, if you so find, did then and there receive and take
into his possession and have under his care and control
as trustee for and on behalf of the said Night & Day Bank
of St. Louis, Missouri, under and by virtue of his office
and position as such agent and Special Deputy Commis-
sioner of Finance, if you so find, twenty-eight thousand,
two hundred and fifty dollars, lawful money of the United
States, and you further find that the same was the money
and personal property of the Night & Day Bank of St.
Louis, Missouri, and was of the value of thirty dollars or
more, and that the said defendant, Donald W. Ross, at
the city of St. Louis and State of Missouri, then and there
unlawfully, feloniously, fraudulently and intentionally did
embezzle and convert to his own use the said twenty-eight
thousand, two hundred and fifty dollars, or any part there-
of, of an amount and value of thirty dollars or more, and
so unlawfully, feloniously, fraudulently and intentionally
did embezzle and convert the same to his own use, with-
out the consent of the said Night & Day Bank of St. Louis,
Missouri, and with the unlawful, felonious and fraudulent
intent then and there to convert the same to his own use
and to permanently deprive the said Night & Day Bank
thereof, without its consent, you will find the defendant,
Donald W. Ross, guilty of embezzlement as charged in
the first count of the indictment and assess his punish-
ment at imprisonment in the penitentiary for a term of
not less than two years or more than five years, and un-
less you so find the facts to be you will acquit the defend-
ant.

"Feloniously, as used in these instructions, means wickedly and against the admonition of the law."

Appellant, in his brief, also objects to said instruction one, as follows: "There was no evidence upon which to hypothesize an instruction, and submit to the jury the question, whether Donald W. Ross did receive and take into his possession and have under his care and control as trustee, for and on behalf of the Night & Day Bank of St. Louis, Missouri, twenty-eight thousand, two hundred and fifty dollars."

The State, through its Commissioner of Finance, had taken over all the property of the Night & Day Bank. The Commissioner of Finance directed this defendant, as his agent and deputy, to take charge of the property of said Night & Day Bank, and to wind up its affairs. In so doing, he was the agent of the State Commissioner of Finance, and held the property taken charge of by him as trustee for said bank. The instruction, as given, would have been valid without the use of the words "as trustee," and did not impair the legality of same by inserting said words.

X. Instruction one, heretofore set out and considered, is the only one discussed in appellant's brief. We have carefully examined the other instructions and find that if any error was committed in respect to same, it was in behalf of appellant in receiving instructions which were more liberal than the law contemplated. We are of the opinion that the instructions gave defendant, at least, all he was entitled to under the law, and that no error was committed against him of which he can legally complain. He received a fair and impartial trial, and was convicted upon clear and convincing proof as shown by the preceding statement.

**Other Instructions.**

In State v. Manley, 107 Mo. l. c. 370-1, Gantt, J., in considering an embezzlement case, said:

"The object and purpose of the statute was to prohibit by severe punishment the conversion of moneys received by virtue of official position and certain fiduciary relations named therein. It was enacted with a view to

prevent the growing tendency of those intrusted with public moneys and trust funds, to speculate for their own personal aggrandizement.

"To accomplish this purpose, it was deemed best to say to officers and trustees, You shall not convert to your own use in any manner whatever the moneys you have received by virtue of your public trust. Your good intentions will not restore these moneys after your investment has proved disastrous. It matters not that in many cases you honestly think you can safely invest the public funds and will be able to restore them when called for. They were not placed in your hands for such a purpose. To save you from dishonor, your sureties from bankruptcy and loss, we will deter you from attempting such a proceeding. Experience justified the Legislature in coming to this conclusion. Observation had taught that many well-meaning men had been lured to their own disgrace and ruin by converting the trust funds in their hands to their own private ends, and, having lost, attempted to cover up their property and make good the trust funds by false charges and vouchers."

The warning which this court thus sounded in 1891, is applicable to existing conditions in the country to-day. If officers occupying positions of trust and confidence, embezzle funds placed in their hands, they should not expect to be relieved from punishment on such legal technicalities as are presented in this case.

The judgment below is for the right party and is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.