**STATE of Missouri, Respondent,**

v.

**William JOHNSON, Appellant.**

No. 45063.

Supreme Court of Missouri.

Division No. 2.

Oct. 8, 1956.

Robert A. McIlrath, Farmington, for appellant.

John M. Dalton, Atty. Gen., William B. Waters, Sp. Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

In the circumstances to be noted William Johnson has been found guilty of grand larceny and sentenced to two years' imprisonment.

The Doba Tavern is on Highway 32 between Bismarck and Elvins in St. Francois County. On June 14, 1954, the owner, Wesley Boesel, left the tavern in charge of his employees, Ruby Porter and Mary Vandergriff. Lewis Nash and Leo Camden were drinking beer in the tavern and Bill John-

son was there, apparently alone, drinking beer. Leo wouldn't say that Bill was drunk, "but I say he was pretty full. He was drinking." Suddenly and unexpectedly Bill went to the rear of the establishment and opened the refrigerator, "to get him something to eat." One of the girls, probably Ruby, remonstrated, told him to come back and she would fix him something to eat. Whereupon Bill threw a bottle of beer at her, grabbed a handful of beans from the refrigerator and threw them in Lewis' face. Lewis immediately hit Bill with his fist and knocked him down. Bill jumped up and began throwing stools and, as Leo ran out the door, went around behind the counter, picked up the cash register, walked out with it, "throwed it in his truck and he took off."

In a short time, in response to a radio message, a highway patrolman found Johnson's red Chevrolet truck near Mitchell overturned and a cash register nearby and some loose change on the ground but Bill was not to be found for some time. Subsequently, in September, while in the St. Francois County jail, Bill had a conversation with a highway patrol sergeant in which, according to the sergeant, "he readily said that he took the cash register out; that he got mad in the tavern and he carried out the cash register." Bill said that "he had become involved in an argument or a fight at this tavern and that he had taken the cash register from the tavern, put it in a truck and that he had had a wreck with the truck and that he had abandoned both truck and the cash register there."

Testifying in his own behalf, Bill's version, in substance, was "That I do not know that I took that register." He says that he went to the tavern about 4:30 in the afternoon and drank some beer. His description of the fracas was this: "Well, everyone was there and they were fixing sandwiches around in back of the bar. They seemed to be all together in a crowd and they were all fixing sandwiches back there, and I asked them to fix me one and they didn't seem to answer; so, I went

around and figured I'd just help myself too. So, I went around and made myself a sandwich. So, when I started back around the bar, why, I was hit and that's all I remember." He said that he did not steal Mr. Boesel's cash register and that he did not admit that he had stolen it. As to his conversation with the sergeant, he said, "I told him that I didn't know about it; that if I did take it I was out of my mind. That's the thing I told him. * * * I told him if I did take it I was out of my head."

■ In these circumstances the appellant urges that the state has failed to prove one of the essential elements of the offense of grand larceny, "that the defendant took said cash register with the intention of permanently depriving the owner of the use thereof." The statute defines grand larceny as "feloniously stealing, taking and carrying away" any money or property of the value of thirty dollars or over "belonging to another", V.A.M.S. § 560.155, but the statute does not set forth the constituent elements of the offense. Either because they were so well known and established or for lack of a more satisfactory all-encompassing definition, the essential, constituent elements of the offense are as they have been declared at common law. State v. Jenkins, Mo., 213 S.W. 796. A generally accepted common-law definition of grand larceny is "the felonious taking by trespass and carrying away by any person of the goods or things personal of another from any place, without the latter's consent and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use or, as sometimes stated, to the use of some person other than the owner." 32 Am.Jur., Sec. 2, p. 883. It is obvious from the mere recital of the evidence that the jury could reasonably find the appellant guilty of grand larceny within the meaning of the generally accepted common-law definition. It is not necessary upon this record to say whether it is an essential element of the offense that the property must have been

taken not only with the felonious intention of depriving the owner of his property but also for the personal gain or benefit of the taker. 32 Am.Jur., Sec. 39, p. 931; State v. Wilson, Mo., 286 S.W.2d 756, 760. Secrecy is not an essential element and the offense may be grand larceny even though the property is taken with the knowledge of the owner or in the presence of others, providing the owner did not consent to the taking, an inference not permissible upon this record. 52 C.J.S., Larceny, § 7(b), p. 805, § 136(b), p. 978; State v. Slusher, 301 Mo. 285, 256 S.W. 817. Compare: State v. Storts, 138 Mo. 127, 39 S.W. 483; State v. Patterson, 347 Mo. 802, 149 S.W.2d 332. The leading of a horse around an enclosure or the dropping of a cash box, scattering its contents upon the floor, may constitute grand larceny. State v. Gazell, 30 Mo. 92; State v. Higgins, 88 Mo. 354. Upon this record, once his admission to the sergeant is accepted, the intention with which the appellant took the cash register and carried it away was an inference for the jury to draw.

■ Partially in this connection the appellant contends that he is entitled to a new trial because the trial court permitted Mr. Boesel, the owner of the cash register, to testify to its value and other witnesses to testify to its contents and, furthermore, that the court prejudicially erred in instructing the jury upon the subject of taking the money in the cash register because there was no evidence to show that Mr. Boesel had any money in the register. When the highway patrolman came upon the overturned truck he took charge of the cash register, turned it over to his superior, a sergeant, who kept it in his home until he turned it over to the sheriff who produced it at the trial. The patrolman identified the cash register as the one found beside the overturned truck. The cash register drawer was closed. The patrolman opened it and it contained thirty dollars in bills, fourteen dollars and some cents in change and "some assorted checks." Boesel identified the cash register as one he had purchased two months previously, he verified its identity from the fact that certain specified checks were in the drawer even though he could not identify the particular money. Since he was the owner of the cash register and could identify it there could be no objection to his testifying to its value of $50 even though he could not qualify as an expert witness and express an opinion upon the value of cash registers in general. State v. Brewer, Mo., 286 S.W.2d 782, 783. If the appellant took the cash register it is indeed difficult to separate the register from its contents or vice versa; the owner identified the register and the checks and that, of course, identified the contents. 52 C.J.S., Larceny, § 116, p. 937; State v. Ball, 321 Mo. 1171, 14 S.W. 2d 638. Again, if the defendant's admission that he took the cash register is accepted there could be no question as to its identity or his responsibility for the theft of the contents as well as of the register, State v. Weidlich, Mo., 269 S.W.2d 69, and the court did not prejudicially err in instructing the jury upon the subject.

As indicated, the appellant testified and to impeach his credibility the state proved that he had been convicted of other offenses. V.A.M.S. § 491.050. In his motion for a new trial it is urged that the court prejudicially erred in permitting the state in rebuttal evidence to "reopen its case" and prove other offenses and that in so doing the state did not identify the defendant as being the "William Johnson" named in the previous convictions. The problem arose in these circumstances: When he was first asked whether he had "ever been convicted of any crimes" he answered "No, sir." Whereupon his lawyer interjected and said, "Now if the Court please, this boy is rather ignorant in what I think—what he thinks you're talking about, felonies and things like that. Because, he has told me he's had some fights and I believe careless and reckless driving charge. He told me that distinctly, so I think that maybe there ought to be an explanation of that." The prosecuting attorney then spe-

cifically asked Bill whether he had been previously convicted "including misdemeanors." Bill answered, "Yes, sir, that's right." But when asked whether he had been convicted of petit larceny back in October 1938 he said, "I don't remember." When asked whether he remembered "any convictions" he answered, "Yes sir, for careless and reckless driving" but he did not remember when. He remembered being in jail "over here" but when asked whether he had again been convicted of petit larceny in June 1939 he again said, "Not that I remember." Then the cross-examination continued:

"Q. Were you convicted on August the 6th, 1939, and sentenced to 15 days in the St. Francois County Jail? A. Well sir, I'll tell you I've been in jail before, yes sir.

"Q. All right. Were you convicted on October 12th, 1940, of peace disturbance and sentenced to six months in St. Francois County Jail? A. Yes, sir.

"Q. Do you know about that? A. Yes, sir.

"Q. Were you convicted of careless and reckless driving on April 25th, 1950, and sentenced to six months in St. Francois County Jail? A. No sir, I don't recall that.

"Q. You don't recall that? A. (Witness shaking his head from left to right.)

"Q. You say you were not or you're just not sure? A. I said I don't recall. I'm not sure, that's correct sir."

Bill was the only defense witness and at the conclusion of his testimony the state announced that there would be no rebuttal evidence and defendant's counsel moved for a judgment of acquittal. Thereafter, upon the prosecuting attorney's request, the state was permitted to offer in evidence, "to show rebuttal, to show part of the case in chief," the record of two prior convictions. One was a conviction of "William Johnson" on April 25, 1950 for careless and reckless driving for which he was fined $25 and

sentenced to six months' imprisonment in the county jail. The other was a conviction of "Wm. Andrew Johnson" on July 23, 1945 for "peace disturbance" for which he was fined $5 and the costs.

As to the previous offenses and convictions which he did not remember, for example the April 25, 1950, conviction for careless and reckless driving, the records were properly admissible in evidence in rebuttal and the court did not prejudicially err in reopening the case and permitting the introduction of the records. State v. Brown, Mo., 165 S.W.2d 420. The identity of names was sufficient to warrant a finding of the identity of persons. 20 Am.Jur., Sec. 206, p. 205; 65 C.J.S., Names, § 15(2), p. 30. It is not necessary, for the reason to be indicated, upon this appeal to examine the rationale of the rule and to attempt a reconciliation of the habitual criminal cases, certain civil actions and the cases involving the impeachment of a defendant who testifies in his own behalf and say whether the identity of names raises "a presumption" of identity of person, State v. Wilson, Mo., 242 S.W. 886; State v. Kelsoe, 76 Mo. 505, or is "prima facie evidence" of identity, State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314; annotation 11 A.L.R.2d 870, 884, or whether it is "a pure presumption." Stack v. General Baking Company, 283 Mo. 396, 420, 223 S.W. 89, 97; 20 Am.Jur., Sec. 204, p. 203. Whatever the rationale of the rule "no such presumption prevails as between the Christian name of one and the initials of another, the surnames being the same." Woolridge v. LaCrosse Lumber Co., 291 Mo. 239, 246, 236 S.W. 294, 296, 19 A.L.R. 1068. As to the second conviction there was no identity of names and there was no proof that "Wm. Andrew Johnson" was the appellant, "William Johnson," and that record should not have been received in evidence. Myles v. St. Louis Public Service Co., Mo.App., 52 S.W.2d 595. However, in view of the appellant's admissions as to some convictions, including a peace disturbance charge for which he served six months in jail, and his lawyer's statement

as to "fights" and misdemeanors, the proof of this second petty offense for which he was fined $5 and the costs was not so patently inflammatory as to deprive the appellant of a fair trial and in the circumstances of this record not so prejudicial as to demand the granting of a new trial.

These are the meritorious questions upon this appeal and the other assignments in the appellant's motion for a new trial require but brief notice. For example, it is urged that the trial court abused its discretion in permitting the prosecuting attorney, as the trial was about to begin, to endorse the names of two additional witnesses, Mr. Boesel and the sheriff, on the information. The appellant's objections were that permitting the endorsements was "prejudicial," that he had not been given notice and was not prepared to meet any testimony these witnesses might give. The court tendered appellant's counsel an opportunity to talk to the sheriff and finally restricted the sheriff's testimony "to establish the chain of custody on the cash register." There was no formal application for a continuance and in the circumstances the court did not so abuse its discretion as to compel the granting of a new trial. State v. Ross, 312 Mo. 490, 279 S.W. 405; State v. Baker, 318 Mo. 542, 300 S.W. 699; State v. Carson, Mo., 286 S.W.2d 750. A somewhat related assignment is that there was prejudicial error in that the state did not produce "the prosecuting witness, Mrs. Porter (Ruby), the one who signed the affidavit which charged the defendant with the crime, defendant having derived under the Constitution of the State of Missouri, to be faced by his accusers." It does appear upon the record that Ruby did not testify. But, there is no affidavit or complaint of any kind in this record, there is no such objection in the record except in the motion for a new trial. 24 C.J.S., Criminal Law, § 1720, p. 427; State v. Muir, Mo., 186 S.W. 1047, and there was no prejudicial error in this regard. State v. Young, 314 Mo. 612, 286 S.W. 29.

The two remaining assignments of error concern the argument of the prosecuting attorney. It is said that he was erroneously permitted "to express his own private opinions in the argument, instead of stating that according to the evidence this was true, but on numerous occasions he gave his own personal opinion." On another occasion it is said that he was permitted "to make his own statement, 'That the man in the blue uniform always told the truth.'" One of the statements objected to was this: "I find it hard to conceive a situation where he might have been carrying this cash register out of there with this money and so forth with some other purpose other than to deprive the owner —." In the other the prosecuting attorney had been discussing the statement (which Bill denied) that the appellant had made to the patrol sergeant and he said that the sergeant "isn't going to make up a story like that." He said, "And, when one of those men in that blue uniform gets up on this stand and raises his hand up and swears to tell the truth you can rest assured that's what he is going to do." The first statement is obviously not an expression of personal opinion as to the appellant's guilt, 23 C.J.S., Criminal Law, § 1104, p. 578, and while the prosecutor may have been somewhat extravagant in praising his witness, State v. Miles, 199 Mo. 530, 98 S.W. 25, the court did not so abuse its discretion in either instance as to constitute prejudicial error. State v. Roseberry, Mo.App., 283 S.W.2d 652, 658.

Questions not required to be presented in the motion for a new trial have also been examined and the transcript shows compliance with all matters necessary to be considered by this court "upon the record before it." Sup.Ct. Rule 28.02, 42 V.A.M.S.; V.A.M.S. § 547.270. The information appropriately charges the appellant with the offense of grand larceny, V.A.M.S. § 560.155, the verdict is in proper form and responsive to the information, V.A.M.S. §§ 546.390, 560.110, there was

allocution and the sentence and judgment are responsive to the verdict. Since no prejudicial error is found or demonstrated upon the transcript the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

EAGER, P. J., STORCKMAN, J., and JAMES W. BROADDUS, Special Judge, concur.

LEEDY, J., not sitting.